**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| RENEE SMITH, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:13-cv-508 |
| | ) | |
| DOMINION LAW ASSOCIATES, P.L.L.C., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER
MOTION TO OVERRULE OBJECTIONS AND TO COMPEL
FULL DISCOVERY RESPONSES BY DOMINION LAW ASSOCIATES,
P.L.L.C. AND LVNV FUNDING, LLC**

COMES NOW the Plaintiff, Renee Smith, by counsel, and as for her Memorandum in

Support of Her Motion to Overrule Objections and to Compel Full Discovery Responses By

Dominion Law Associates, P.L.L.C. and LVNV Funding, LLC, she states as follows:

**INTRODUCTION**

Defendants Dominion Law Associates, P.L.L.C. ("DLA") and LVNV Funding, LLC

("LVNV") have refused to substantively answer most of Plaintiff's First Set of Interrogatories or

produce many of the documents requested in Plaintiff's First Set of Requests for Production of

Documents. [1] Instead, they hide behind vague, generalized objections and claims of privilege and

other protections from disclosure without compliance with the Federal Rules of Civil Procedure.

And, despite the two extensions that the Defendants received, they objected to every single

_____

[1] For the Court's reference, DLA's Responses and Objections to Plaintiff's First Set of
Interrogatories are attached as Exhibit "A". LVNV's Responses and Objections to Plaintiff's
First Set of Interrogatories are attached as Exhibit "B". DLA's Responses and Objections to
Plaintiff's First Set of Requests for Production of Documents are attached as Exhibit "C".
LVNV's Responses and Objections to Plaintiff's First Set of Requests for Production of
Documents are attached as Exhibit D".

1

discovery request. It is inconceivable that Plaintiff's counsel was entirely incapable of drafting even one Interrogatory or Request for Production that was not objectionable. Further, some of these objections are nonsensical. *See e.g.*, Ex. A; (objecting to all of Plaintiff's 16 Interrogatories because Interrogatory No. 5 contains 43 subparts when it clearly does not); *see also* Ex. B (same). Many of the Defendants' answers also stated that they would produce the documents that it deemed responsive subject to an appropriate protective order, yet they only first asked for a protective order during the parties' January 15 meet and confer conference.[2] However, even when a protective order is in place, many of these objections are improper.  For example, with regard to the software manuals sought by the Plaintiff, the same debt collection software is used by several other debt collection agencies across the nation. Withholding these documents is analogous to a party's efforts to withhold the installation guide for Microsoft Windows.  Further, it is inconceivable how the Defendants' internal records regarding the Plaintiff would qualify as "trade secrets" or would otherwise meet the high standards required to justify a order demanding their secrecy or requiring their sealing upon filing. Plaintiff strongly disagrees that a protective order is necessary or that the absence of a protective order provided justification of the Defendants to withhold production.

Then, after serving their discovery responses almost a month late, and after a lengthy meet and confer conference and follow-up emails (*see* Exhibit "E"), Defendants have refused to withdraw their improper objections or provide full discovery responses. Indeed, they only recently provided the basic sets of collection logs and call logs that most debt collectors provide

---

[2] Pursuant to Rule 37(d)(1)(B), Plaintiff and her counsel certify that they have thoroughly conferred with the Defendants in an effort to obtain the discovery responses without Court intervention

at the outset of the case, and as the rules require. Fed. R. Civ. P. 26(a)(1)(A). Moreover, many of the entries listed in the logs are redacted.

Additionally, Plaintiff noticed three depositions of the Defendants' employees to occur on January 27 and 28, 2014. Plaintiff served these notices on January 14, 2014. During the meet and confer call, Defendants' counsel informed Plaintiff that these depositions would not be able to occur as scheduled and asked if he could provide alternate dates the next week. While the Defendant did propose alternate dates after waiting nine days after the deposition notice was served, each of the proposed dates is at least 22 days after the depositions were originally noticed. In a district where there is already an extremely short discovery period, this three-week delay substantially prejudices the Plaintiff's ability to effectively prosecute her case.

The Defendants' delay tactics have substantially impaired the ability to formulate and serve supplemental discovery requests, as well as conduct third party discovery. For example, the information that Plaintiff anticipated obtaining during these depositions would be used to notice Defendant LVNV's contact with the Plaintiff's original creditor, GE Capital Corporation. GE Capital Corporation is located in Connecticut, so any subpoenas will have to be issued out of the District of Connecticut and any third-party discovery disputes would have to be litigation in that district. With the three-week delay caused by the Defendants, it is unlikely that the Plaintiff will not have enough time to obtain discovery from this third-party before discovery closes.

Since the Defendants have refused to provide substantial responses thus far and with the discovery cutoff in this case quickly approaching, Plaintiff is left with no other choice but to file this motion.

## ARGUMENT

**A.      Defendants' Boilerplate Objections Are Not Permitted By Rule 34.**

The Federal Rules of Civil Procedure require that the grounds for any objection to an interrogatory or a request for production of document must be specifically stated. Fed. R. Civ. P. 33(b)(4). Additionally, a party objecting to a request for production of documents party must permit inspection of the non-objectionable part. FED. R. CIV. P. 34(b)(2)(C).

General blanket objections do not comply with these provisions of the Federal Rules of Civil Procedure and courts have uniformly expressed their disfavor for them. *See, e.g.*, *Cappetta*, Civ. No. 3:08CV288, at 4; *Pulsecard, Inc., v. Discover Card Servs.*, 168 F.R.D. 295, 303 (Kan. 1996); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508 (N.D. Iowa 2000). "'General objections are not useful to the court ruling on a discovery motion,' and a bare objection does not meet the standard for a successful objection." *Cappetta*, Civ. No. 3:08CV288, at 6 (quoting *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 58 (D.D.C. 1984)). In fact, Courts in the Fourth Circuit routinely hold that general objections to discovery requests, without more, are invalid. *See, e.g., Kelly v. FedEx Ground Package Sys., Inc.*, No. 3:10CV1265, 2011 WL 1584764, at *1 (S.D. W. Va. Apr. 26, 2011); *Mainstreet Collection, Inc. v. Kirklands, Inc.,* 270 F.R.D. 238 (E.D.N.C. 2010) (finding that a mere recitation of the familiar litany that a request is overly broad, burdensome, oppressive, and irrelevant does not constitute a specific objection); *Hager v. Graham,* 267 F.R.D. 486, 492 (N.D. W. Va. 2010) ("[G]eneral objections to discovery, without more, do not satisfy the burden of the responding party . . . because they cannot be applied with sufficient specificity to enable courts to evaluate their merits."); *Mills v. E. Gulf Coast Preparation Co., LLC,* 259 F.R.D. 118, 132 (S.D. W. Va. 2009) ("[B]oilerplate objections regurgitating words and phrases from Rule 26 are completely

unacceptable."); *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354 (D. Md. 2008) (stating that the court disapproves of a general objection asserted "to the extent" that it applies); *Marens v. Carrabba's Italian Grill*, 196 F.R.D. 35, 37 (D. Md. 2000) (determining that an objection due to overburden must articulate with specificity the nature and costs associated with the claimed burden and why these are alleged to outweigh the goal of liberal discovery).

Blanket objections and mere conclusions are never proper or sufficient. *See Marens*, 196 F.R.D. at 37; *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 182–183 (E.D. Cal. 1991); *see also Cappetta*, Civ. No. 3:08CV288, at 4. Courts have routinely granted motions to compel and even sanctions where a party responding to discovery utilizes frivolous, boilerplate objections. Such obstructionist tactics are not to be condoned. The only way to combat this practice is to penalize those who thwart court orders and interpose improper, frivolous, deplorable objections to discovery. *St. Paul Reinsurance Co., et al v. Commercial Fin. Corp.*, 198 F.R.D. 508 (N.D. Iowa. 2000). As a result, a party's reliance solely upon general objections is injudicious and often results in the unintentional waiver of the objection. *Kelly*, 2011 WL 1584764, at *1; *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226 (M.D.N.C. 2010).

Although the Defendants' objections are not labeled "general objections", the Defendants use almost identical language to object to nearly every discovery request. Because these generalized and boilerplate objections are not proper under the Federal Rules of Civil Procedure and do not specifically identify the portion of the interrogatory or request to which they object, they should be stricken.

**B.**     **The Defendants' "Relevance" Objections Are Improper.**

Throughout their objections to Plaintiff's First Set of Interrogatories and objections to

Plaintiff's First Set of Requests for Production of Documents, the Defendants have taken the

position that information and documents sought by the Plaintiff are not relevant. They seek to

withhold from discovery information and documents that they have unilaterally deemed

irrelevant. While Plaintiff very much believes that the discovery sought is relevant, it is

inarguable that these requests are at least "reasonably calculated to lead to the discovery of

admissible evidence." Fed. R. Civ. P. 26(b)(1).

Under Rule 26(b), the Plaintiff may discover any materials that are not privileged if the

materials requested are reasonably calculated to lead to the discovery of admissible evidence.

Rule 26 is very broad, permitting a wide range of inquiry at the pre-trial stage. If there is any

possibility that the information sought may be relevant, the court should permit the discovery.

*Hickman v. Taylor*, 329 U.S. 495 (1947). The policy underlying this rule is to promote fair

litigation, through mutual knowledge of relevant facts. Therefore, the rule is to be liberally

interpreted in favor of granting discovery. *Hickman*, 329 U.S. at 507. Furthermore, "relevancy"

during discovery, as defined in Rule 26, is much broader than relevancy at trial. "Relevancy is

broadly construed at the discovery stage of litigation and a request for discovery should be

considered relevant if there is any possibility that the information sought may be relevant to the

subject matter of the action." *Biliske v. Am. Live Stock Ins. Co.*, 73 F. R. D. 124, 125 (W.D. OK.

1977). Discovery of such "relevant" information "is construed broadly to include 'any' matter

that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or

may be in the case." *Midland-Ross Corp. v. United Steelworkers of Am.*, 83 F.R.D. 426, 427

(W.D. PA. 1979) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978)).

This broad definition of relevancy also applies to the discovery of documents. *Miller v. Fed. Express Co.*, 186 F.R.D. 376 (W.D. Tenn. 1999). Discovery of documents is permitted where the documents might lead to the discovery of admissible evidence. *Id.* With documents, as with discovery in general, relevance is determined by whether the information or documents sought relate to a claim, defense, or credibility of a witness. It also includes whether the information contained in the requested documents might reasonably lead to the discovery or location of relevant and admissible evidence. *Scouler v. Craig*, 116 F.R.D. 494 (N.J. 1987); *Hickman*, 329 U.S. at 507 ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into facts underlying the opponent's case.").

Courts considering motions to compel have held that the party objecting to production of documents has the burden of proving that the records are either not relevant or that the burden of production is so great as to outweigh the need for fair discovery and the goals of discovery. *Oleson v. K-Mart*, 175 F.R.D. 560, 565 (Kan. 1997); *Burke v. N.Y.C. Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987). The party seeking to deny discovery has an affirmative duty to articulate facts, as opposed to mere conclusions, regarding the alleged lack of relevancy or burden. Additionally, for a relevance objection to be adequate, it must be plain enough and specific enough so that the court can understand in what way the discovery request is alleged to be inadequate. *Cappetta*, Civ. No. 3:08CV288, at 5.

The Defendants objected to almost every one of the Plaintiff's interrogatories and requests for production of documents as irrelevant. Just on the basis of relevance, each Defendant objected to 15 out of 16 interrogatories and 23 out of 27 requests for production of documents, as discussed below.

Plaintiff's Interrogatory No. 1 asks the Defendants to:

> State the full names and job titles of all individuals who provided information in answering these Interrogatories, and for each individual, describe the knowledge that (s)he possesses regarding the Defendants' collection or attempted collection of money from the Plaintiffs. This Interrogatory specifically excludes the identity, knowledge, and work product of attorney(s) who represent the Defendants in this matter.

Ex. A, at 3; Ex. B, at 3. Similarly, Plaintiff's Interrogatory No. 3 asks the Defendants to "Identify all persons or entities known to you who/that have knowledge of facts relevant to this case, including but not limited to, all persons interviewed by you, by your counsel, or by any person cooperating with you in the defense of this action." Ex. A, at 8; Ex. B, at 8. These interrogatories are relevant in that they seek information about individuals who have knowledge about the Plaintiff's claims. These individuals' knowledge is certainly relevant to the Plaintiff's claims, and Plaintiff would use the answer to these interrogatories in order to conduct depositions and draft supplemental discovery requests.

Plaintiff's Interrogatory No. 2 asks the Defendants:

> For each case in which [the Defendants have] been sued for violating 15 U.S.C. § 1692, *et seq.* for the five-year period preceding the filing date of the Complaint, state the name of the case, the case number, the jurisdiction in which it was filed and the outcome of the case (e.g. judgment for the Plaintiff, judgment for [Defendants], or settled).

Ex. A, at 6; Ex. B, at 5. This interrogatory is relevant because it will tend to show that Defendants were on notice of the requirements of the FDCPA and knew or should have known that the actions they took against the Plaintiff were in violation of federal law. Further, this request has been ordered on numerous occasions by Judge Payne and Magistrate Judge Lauck against other Defendants represented by Troutman Sanders.

Plaintiff's Interrogatory No. 4 asks the Defendants:

> If you contend that the Plaintiffs are or have ever been personally liable to you for the accounts that are the subject of this lawsuit, state the dates the Plaintiffs became personally liable and specifically list all debits and credits applied to each

of the accounts, the account numbers, and all facts upon which you relied in concluding that the Plaintiffs were personally liable for the specific amounts claimed and which comprise the total amount of money that you collected or attempted to collect from them.  In the alternative, if you now believe that you collected or attempted to collect money from either Plaintiff that they did not owe, please state the amount of money that was collected as a result of an error or mistake.

Ex. A, at 10; Ex. B, at 9. This request is clearly relevant. Plaintiff's claims all revolve around the Defendants' attempt to collect money that they claim that the Plaintiff owes them. The amount of money that the Defendants claim is owed, as well as their basis for believing that the Plaintiff owe this money are relevant to the Plaintiff's FDCPA claims.

Plaintiff's Interrogatory No. 5 asks the Defendants to:

For each factual allegation contained in the Complaint or Amended Complaint which you do not unequivocally admit, state with detail and particularity the factual basis for your failure to do so, the efforts undertaken by you to ascertain the truth of said allegation, identify all documents related or relevant to said allegation or your basis for not so admitting, and identify all persons with knowledge of the fact or of your basis for not so admitting.

Ex. A, at 12; Ex. B, at 11. This information is clearly relevant to the Plaintiff's claims, as it seeks to ascertain the reasons supporting the Defendants denial of many of the allegations in Plaintiff's complaint. The information gathered by this interrogatory will be used to serve supplemental discovery requests and to conduct depositions.

Plaintiff's Interrogatory No. 6 asks the Defendants to "state the date and nature of each communication, including telephone and/or written communications, from any of the Defendants to any of the Plaintiffs within the one-year preceding the filing of this lawsuit, and identify all parties to the communication." Ex. A, at 14; Ex. B, at 13. This information is clearly relevant to the Plaintiff's claims, as she is alleging that the Defendants contacted her after notification that she was represented by counsel in violation of the FDCPA. This interrogatory will establish that the Defendant did in fact contact Plaintiff after receiving notification that she was represented by

counsel, and will further show how many times each Defendant violated the FDCPA with such conduct.

Plaintiff's Interrogatory No. 7 asks the Defendants to:

> State the date and nature of each communication, including telephone, electronic, and/or written communications, to or from any of the Defendants, and any third party, including another debt collector or consumer reporting agency, with regard to the Plaintiffs, the accounts that are the subject of this lawsuit, and/or any of the Plaintiffs' personal identifiers, and identify all parties to the communication.

Ex. A, at 16; Ex. B, at 15. The information sought by this interrogatory is relevant to the Plaintiff's FDCPA claims, as it seeks information that pertains to the accounts that are the basis of Plaintiff's claims. This information is relevant under the broad definition of relevancy used in the discovery phase, as discussed above.

Plaintiff's Interrogatory No. 8 asks the Defendants to "state the names, aliases, job title, business and home addresses and telephone numbers, dates of employment, and whether they were ever subject to reprimand or discipline for collection tactics of all the individual collectors who interacted with any of the Plaintiffs." Ex. A, at 19; Ex. B at 18. This interrogatory is relevant because it seeks information about individuals who interacted with the Plaintiff and led the Plaintiff to file her FDCPA claims against the Defendants. These individuals' knowledge is certainly relevant to the Plaintiff's claims as it relates the claims alleged by the Plaintiff in her Complaint, and Plaintiff would use the answer to this interrogatory in order to conduct depositions. Moreover, whether the Defendants ever reprimanded or rewarded their employees for violating the FDCPA or company policy is important in establishing damages.

Plaintiff's Interrogatory No. 9 asks the Defendants to:

> Identify and outline all training provided to every employee, including new employees and Legal Support employees, involved in the collection of consumer accounts, specifically identifying the following:
> a)     The training content, timing, and duration;

b)      All documents and audio or visual materials used in such training; and

c)      Each person involved in providing such training.

Ex. A, at 22; Ex. B, at 21. Similarly, Plaintiff's Interrogatory No. 10 asks the Defendants to

"identify all manuals, instructions, restrictions or other documents and/or materials that you use

to instruct your employees regarding the procedures involved with collecting debts from

consumers, including those pertaining to your Legal Support employees." Ex. A, at 24; Ex. B, at

23. The information sought by these interrogatories is relevant because it will tend to show that

Defendants were on notice of the requirements of the FDCPA and knew or should have known

that the actions they took against the Plaintiff were in violation of federal law. They will also be

used during the Plaintiff's deposition of the Defendants' employees.

Plaintiff's Interrogatory No. 11 asks the Defendants to:

List and explain all abbreviations and code words, letters, numerals, or symbols
used by you or your employees in their collection activities and collection logs.
In lieu of a code-by-code description, Plaintiffs will accept your provision and
reference to a software manual or other document that provides the meaning of
such codes.

Ex. A, at 26; Ex. B, at 25. The information sought by this interrogatory is relevant because

Plaintiff's counsel will use them to understand the collection logs that the Defendants produce,

as many of these logs contain shorthand abbreviations that are not easily understood without a

reference. Plaintiff anticipates that she will need an explanation of these codes so that she can

fully understand Defendants' document production.

Plaintiff's Interrogatory No. 12 asks the Defendants to "identify and describe each

document and record known to you and which is related to any of the Plaintiffs, any of the

Plaintiffs' personal identifiers, and/or the accounts that are the subject of this lawsuit." Ex. A, at

28; Ex. B, at 27. This information is relevant to the Plaintiff's FDCPA claims, as it concerns the

accounts that are the basis of Plaintiff's claims, which is clearly relevant under the broad definition of relevancy used in the discovery phase, as discussed above.

Plaintiff's Interrogatory No. 14 asked the Defendants to "State the name(s) and address(es) of your liability insurer(s) for the last three years and the dates of coverage, type, and policy number(s) of each liability insurance policy." Ex. A, at 32; Ex. B, at 31. Similarly, Plaintiff's Interrogatory No. 15 asks the Defendants to "identify and describe each claim made under each liability insurance policy in the last two years, including the date of the claim, claim number, the subject of the claim, the status of the claim, the resolution of the claim, and any amounts paid under each policy." Ex. A, at 34; Ex. B, at 31.  Not only is this information relevant, Rule 26(a) (1) requires its production. To date, Defendants has only provided the declaration page of DLA's insurance policy. Notwithstanding the fact that such an insurance policy does not require protection, DLA is required to produce the entire insurance policy and has refused to do so.

Plaintiff's Request for Production Nos. 1, 2, 3, 4, 18, and 20 all seek information relating to Plaintiff's accounts with the Defendants. The information sought by each of these requests is relevant because it concerns information about the accounts that are the basis of Plaintiff's FDCPA claims. This information is relevant under the broad definition of relevancy used in the discovery phase, as discussed above.

Plaintiff's Request for Production No. 5 seeks "all documents that describe the organizational structure of [the Defendants']" Ex. C, at 7; Ex. D, at 7. This information sought by this request is relevant because it will help the Plaintiff to establish possible witnesses that she can depose regarding her claims, including the Defendants' higher level employees that would be in charge of supervising the actions of the debt collectors that interacted with the Plaintiff and led to her FDCPA claims.

Plaintiff's Request for Production Nos. 7, 8, 11, 12, and 15 all seek information related to the Defendants' debt collection employees—their compensation, training, and any disciplinary actions that have been taken against them. This information is relevant, as it shows that the Defendants knew or should have known that their actions violated federal law. Plaintiff also believes that it will show that the Defendants' employees were encouraged to violate federal law in order to maximize the companies' profit margins. Finally, information about the individual collectors who interacted with the Plaintiff would be used to conduct a deposition of the employees.

Plaintiff's Request for Production No. 10 seeks "all manuals that describe, detail, or explain the operation of any codes within any computer program or software in which data has been compiled, created, stored, or organized pertaining to [Plaintiff Smith]." Ex. C, at 12; Ex. D, at 12. The information sought by this request is relevant because the Plaintiff anticipates that the information will be needed to understand the technical manuals requested by the Plaintiff, which are relevant to her FDCPA claims as discussed above.

Plaintiff's Request for Production No. 13 seeks

All collection software manuals and/or instruction guides for each and every computer system, software package, software system, or other electronic or non-electronic device used in any manner in your collection process, including but not limited to any automated or computerized dialing system by which calls are placed to consumers.

Ex. C, at 15; Ex. D, at 15. This information sought by this request is relevant to the Plaintiff's FDCPA claims, as she is entitled to discover information about the technology that the Defendants used to collect her account, including any calls that they might have placed to her in an attempt to collect the accounts. Moreover, this information will help establish that the

Defendants' had the technological capabilities to "flag" Plaintiff's file to show that she was represented by an attorney.

Plaintiff's Request for Production No. 16 seeks "All documents in your possession or control that you contend are relevant in any way to the subject matter of this lawsuit." Ex. C, at 16; Ex. D, at 16. Simply put, it is unfathomable how the Defendants can credibily argue that this requests "seeks the discovery of information that immaterial and irrelevant to the claims asserted in Plaintiff Smith's Amended Complaint." Ex. C, at 16; Ex. D, at 16.

Plaintiff's Request for Production Nos. 17, 21, and 22 seek information relating to the calls and correspondance that the Defendants placed or sent the Plaintiff. This information is clearly relevant to the Plaintiff's claims, as she is alleging that the Defendants contacted her after notification that she was represented by counsel in violation of the FDCPA. This interrogatory will establish that Plaintiff was in fact contacted after the notification and how many times each Defendant violated the FDCPA by contacting her.

Plaintiff's Request for Production No. 19 seeks "all Complaints filed against you in which you have been sued for alleged violation(s) of 15 U.S.C. § 1692, *et seq.* and/or 47 U.S.C. § 227, *et seq.* in the five-year period preceding the filing date of this lawsuit." Ex. C, at 22; Ex. D, at 22. This information sought by this request is relevant because it will tend to show that Defendants were on notice of the requirements of the FDCPA and knew or should have known that the actions they took against the Plaintiff were in violation of federal law.

Plaintiff's Request for Production Nos. 25 and 26 to DLA and Nos. 24 and 25 to LVNV all seek documents exchanged between the two defendants, as well as all contracts between them. Ex. C, at 27-28; Ex. D, at 27-28. The information sought by these requests is relevant because it will reveal the circumstances under which DLA was collecting money from the

Plaintiff. For instance, Plaintiff believes that DLA might be collecting money on behalf of LVNV under a contingency fee arrangement. If that is the case, Plaintiff will use this evidence to show that DLA was incentivized to use whatever means available, including violating federal law, to collect money from the Plaintiff so that it would receive a higher fee. This information is certainly relevant under the broad Rule 26 standard described above.

Plaintiff's Request for Production to LVNV No. 26 requests "All documents which relate to your contractual agreements(s) or other business relationships with any persons or entity(ies) that assigned or sold the Plaintiffs' accounts to you with respect to such accounts or any portfolio within which they were contained." Ex. D, at 29. This information is relevant to establish that LVNV was actually entitled to collect the accounts at issue in the Complaint from the Plaintiff, as well as how much money Plaintiff owed on the accounts. All of this information is at the heart of Plaintiff's FDCPA claims.

Plaintiff's Request for Production No. 27 seeks "a plain-English description or glossary for any and all lists, legends, codes, abbreviations, collector initials, or other non-obvious terms, words, or data contained in any of the documents produced above." Ex. C, at 29; Ex. D, at 30. The information sought by this request is relevant because the Plaintiff anticipates that the information will be needed to understand any system manuals produced by the Defendants, which are relevant to the Plaintiff's FDCPA claims as discussed above.

Defendants also assert several relevancy objections to Plaintiff Smith's discovery requests on the basis that they "seek information about accounts not at issue in the Complaint." However, Plaintiff Smith's complaint does not state that the claims alleged are limited to only one account. In fact, it specifically acknowledges that there may have been more than one account associated with the Plaintiff that was assigned to the Defendants for collection. Am.

Compl. ¶7 ("The Defendants contend that Plaintiffs each incurred *one or more* financial

obligations" (emphasis added)); Am. Compl. ¶8 ("the Defendants allege that *debts* owed by

Plaintiff Smith were consigned, placed, or otherwise transferred to the Defendant for collection"

(emphasis added)). Thus, the Complaint does not limit Plaintiff Smith's claims to only one

account; instead, it alleges violations for all of her accounts held by the Defendants and therefore

DLA's objections to Interrogatory Nos. 1, 3, 4, 5, 6, 7, 8, 11, and 12 and Request for Production

of Document Nos. 1, 2, 3, 4, 10, 15, 16, and 17, as well as LVNV's objections to Interrogatory

Nos. 1, 3, 4, 5, 6, 7, 8, 11, and 12 and Request for Production of Document Nos. 1, 2, 3, 4, 15,

16, and 17 are not proper and should be overruled.

**C.      The Defendants' "Overbroad" and "Burden" Objections Are Improper.**

To voice a successful objection to a discovery request, an objecting party may not simply

intone the familiar "overly broad, burdensome, oppressive and irrelevant" litany. The mere

statement that a discovery request is burdensome is not adequate to voice a successful objection

to discovery. *Mainstreet Collection, Inc. v. Kirklands, Inc.,* 270 F.R.D. 238 (E.D.N.C. 2010)

(finding that a mere recitation of the familiar litany that a request is overly broad, burdensome,

oppressive, and irrelevant does not constitute a specific objection); *see also Josephs v. Harris

Corp.*, 677 F.2d 985, 992 (3rd Cir. 1982); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,

894 F.2d 1482 (5th Cir. 1990); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th

Cir. 1985). The objecting party must provide more to support its claim. It must demonstrate

specifically how, given the liberal construction afforded the federal discovery rules, the

discovery request is overly broad, burdensome or oppressive by submitting affidavits or offering

evidence revealing the nature of the burden. *Cappetta*, Civ. No. 3:08CV288, at 6–7. *See also

Marens v. Carrabba's Italian Grill*, 196 F.R.D. 35, 37 (D. Md. 2000) (determining that where

there is a claim that the discovery sought is overburdening, the party making the claim must articulate with specificity the nature and costs associated with the claimed burden and why these are alleged to outweigh the goal of liberal discovery); *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); *Burns v. Image Films Entm't*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

The duty of establishing the propriety of an objection based on a claim that the request is unduly burdensome is on the objecting party. *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332 (Kan. 1991); *see also Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 353 (N.J. 1990); *G-69 v. Degnan*, 130 F.R.D. 326, 331 (D.N.J.1990); *Flora v. Hamilton*, 81 F.R.D. 576 (M.D.N.C. 1978). The objection must show with specificity how the discovery request is overly broad, burdensome, or oppressive and submit affidavits in support or offer evidence which reveals the nature of the burden. *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 59–60 (D.C. 1984); *see also Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Compagnie Francaise D'Assurance Pour Le Commerce Exterior v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42–43 (S.D.N.Y. 1984); *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D. Pa. 1980); *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979); *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332 (D. Kan. 1991); *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) ("The onus is therefore on the party objecting to discovery to state the grounds for the objection 'with specificity.' Rule 33(b)(4). Mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice."). Without a clear showing that the request is truly 'overly' burdensome, the objection will not be allowed. The mere fact that discovery requires work and may be time consuming is

not sufficient to establish undue burden. *Fagan v. District of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991); *see also Luey v. Sterling Drug, Inc.*, 240 F. Supp. 632, 634–35 (W.D. Mich. 1965); *United States v. Nysco Labs.*, 26 F.R.D. 159, 161–62 (E.D.N.Y. 1960).

In this case, the Defendants have objected to several interrogatories and requests for production on the grounds of over breadth and/or undue burden. *See* Ex. E; Ex. F; Ex. G; Ex. H. The objections are unaccompanied by any explanation or evidence of the burden. This exact misconduct was recently considered and criticized by Magistrate Judge Lauck in *Cappetta v. GC Services Ltd. P'ship*, Civ. No. 3:08CV288 (E.D. Va. Dec. 24, 2008), ECF 65.  Judge Lauck rejected similarly boiler-plate and unexplained assertions of burden and explained, "In order to overcome the liberal construction afforded the federal discovery rules, a party objecting on the grounds that a request is overly burdensome must submit affidavits or other evidence indicating with specificity the nature and extent of the burden." *Id*. at 6–7. Since no such affidavits or other evidence has been presented to the Plaintiff, DLA's breadth and undue burden objections to Interrogatory Nos. 1-12, and 14-15, as well as Request for Production Nos. 3–5, 7, 8, 10–15, 17–22, and 25–27, as well as LVNV's breadth and undue burden objections to Interrogatory Nos. 1–12 and 14–15, as well as Request for Production Nos. 3–5, 7, 8, 10–15, 17–22, and 24–27, are improper and should be overruled.

**D.      The Defendants' privilege objections are improper.**

Privilege protections are not broadly construed.  "The party objecting to discovery has the burden of establishing the existence of a privilege by establishing all elements of the privilege." 10 Fed. Proc., L. Ed. § 26:107; see also *Rambus, Inc. v. Infineon Technologies AG*, 220 F.R.D. 264, 271–72 (E.D. Va. 2004).  Such burden may only be met with a proper "evidentiary showing based on competent evidence, and cannot be discharged by mere conclusory assertions." *Id*.

"The proponent of the privilege must establish not only that an attorney-client relationship existed, but also that the specific communications at issue are privileged and that the privilege was not waived." *Zeus Enters. v. Alphin Aircraft, Inc.,* 190 F.3d 238, 244 (4th Cir.1999).  See also *E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 605 (E.D. Va. 2010).

Because the attorney-client privilege restricts the discovery of the truth, it should be narrowly construed and recognized "only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *In re Grand Jury Subpoena*, 341 F.3d 331, 62 Fed. R. Evid. Serv. 190 (4th Cir. 2003).

This Court has succinctly outlined the complex thresholds required to meet the attorney-client privilege "for each document":

> (1) the asserted holder of the privilege is or has sought to become a client;

> (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;

> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

> (4) the privilege has been (a) claimed and (b) not waived by the client.

*Rambus*, 220 F.R.D. at 272 (citations omitted). Similarly, in order to establish the applicability of the work product privilege, a party must show, "as to each document, that the work product in question was: (1) prepared by, or under the direction of, an attorney and (2) was prepared in anticipation of litigation. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re Grand Jury Proceedings,* 102 F.3d at 750." 220 F.R.D. at 272.

The analysis employed to determine whether a party may successfully assert the work-product doctrine is similarly stringent.  The party asserting the work-product doctrine as a means of preventing discovery of such information bears the burden of showing that the "'work product' was prepared in anticipation of litigation." *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 748 (E.D. Va. 2007) (citing *Sandberg v. Va. Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992)). To satisfy this burden, the party asserting the privilege must "'come forward with a specific demonstration of facts supporting the requested protection,' preferably though affidavits from knowledgeable persons." *Id.* (quoting *Suggs v. Whitaker*, 152 F.R.D. 501, 505 (M.D.N.C. 1993); *see also North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 515 (M.D.N.C. 1986) (noting that the assertion of the privilege requires a showing that "precise facts exist to support the claim of privilege"). However, assertions of privilege are strictly construed so as to be consistent with the logic of its principle. *RLI Ins. Co.*, 477 F. Supp. at 748; *Trammel v. United States*, 445 U.S. 40, 50-51 (1980); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1982).

1.      *Defendants have forfeited any privilege coverage that may have existed by their refusal to comply with this Court's Order and Rule 26(b)(5).*

Given the narrow construction of privilege and the general presumption of openness in discovery, a right to withhold documents and testimony on the basis of privilege is not unilaterally determined by the objecting party.  Rather, a party claiming privilege must first articulate such objection in a specific and timely manner and in sufficient detail to enable an opposing party and the Court the means to determine the propriety of such designations. "Documents as to which a privilege is claimed must be described with particularity and accompanied by a particularized assertion of the privilege."  10 Fed. Proc., L. Ed. § 26:111. Boilerplate objections are insufficient to assert a privilege.  *Id.*

Every document that Defendants have withheld based on a privilege objection, but which was not described and sufficiently detailed in a privilege log must be compelled.  Privilege is waived.  Fed. R. Civ. P. 26(b)(5) provides:

> **(b)(5)** *Claiming Privilege or Protecting Trial-Preparation Materials.*
> **(A)** *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>> **(i)** expressly make the claim; and
>> **(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26.  For nearly every document at issue in this motion, Defendants have refused to provide any description, let alone one that "will enable other parties to assess the claim."  As this Court has consistently held:

> For many years, courts have required that parties claiming privileges demonstrate entitlement thereto in a list or log that describes the ground of the putative protection with a degree of specificity that allows the opposing party to assess the assertion of the privilege against the applicable tests and to challenge any claim thought to be wanting. That assessment and any challenge, of course, must be done on the basis of the description contained on the log (or an equivalent pleading) because the opposing party does not have access to the putatively privileged document when seeking to mount a challenge to a privilege claim. Accordingly, the descriptions in the log must satisfy the claiming party's burden.

*Rambus, Inc. v. Infineon Technologies AG*, 220 F.R.D. 264, 272 (E.D. Va. 2004).

When a party refuses to provide a timely privilege log, it forfeits the use of privilege as a basis for its objections.  *Id*. at 273.

Defendants' privilege log (attached as Exhibit "F") does not comply with these requirements. Many of the entries do not disclose the sender or recipient of the documents. *See* Ex. F, at 1, 3-4. Furthermore, LVNV does not have any documents listed on the privilege log at

all. Since LVNV has not identified any privilege documents on its privilege log, it has forfeited

any objection based on privilege and must produce any withheld documents.

2.   *Defendants' have waived privilege as to the subject matter of its affidavit process and relationship between each other.*

Communications are not subject to a privileged status "merely because one of the parties

is an attorney or because an attorney was present when the communications were made". *United*

*States v. Cohn*, 303 F. Supp. 2d 672, 683 (D. Md. 2003) (citing *Neuder v. Battelle Pacific*

*Northwest National Laboratory*, 194 F.R.D. 289, 293 (D.D.C. 2000)).  To the extent that the

attorney acts for a "pure, ordinary business function," the communication is outside of the scope

of the a privileged communication.  *See In re Allen*, 106 F.3d 582, 602 (4th Cir. 1997).  Instead,

"'[w]hen the legal advice is merely incidental to business advice, the privilege does not apply.'"

*Cohn*, 303 F. Supp. 2d at 683 (quoting *Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*,

150 F.R.D. 193, 197 (D. Kan. 1993); *Neuder*, 194 F.R.D. at 293); *see also Brainware, Inc. v.*

*Scan-Optics, Ltd.*, 3:11CV755, 2012 WL 2872812, at *3 n.3 (E.D. Va. July 12, 2012),

*reconsideration denied*, 3:11CV755, 2012 WL 3555410 (E.D. Va. Aug. 16, 2012); *Glaxo, Inc. v.*

*Novopharm Ltd.*, 148 F.R.D. 535, 540 (E.D.N.C. 1993).  Furthermore, the privilege does not

apply to communications "'as to which a business purpose would have served as a sufficient

cause, i.e., any communication that would have been made because of a business purpose even if

there had been no perceived additional interest in securing legal advice.'" *Cohn*, 303 F. Supp. 2d

at 684 (quoting *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990).

Determining whether a communication's primary purpose was providing legal services

involves a contextual analysis by the court.  *Cohn*, 303 F. Supp. 2d at 684; *see also Neuder*, 194

F.R.D. at 293.  DLA bears the burden of establishing that its communications with LVNV were

privileged.  However, DLA cannot show that each communication between it and LVNV "was

more likely 'legal' than 'business' in nature." *Brainware, Inc.*, 3:11CV755, 2012 WL 2872812, at *3 n.3 (citing *Am. Nat'l Bank & Trust Co. v. Equitable Life Assur. Soc'y of the U.S.*, 406 F.3d 867, 879 (7th Cir. 2005); *Neuder v. Battelle Pac. N.W. Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C. 2000). When LVNV purchases a portfolio of defaulted credit card debt, it refers the accounts to third-party law firms across the country for collection of the accounts. It refers many of its Virginia consumers to DLA for collection. When it refers the accounts to DLA, it does not seek legal advice from DLA regarding the accounts—instead, DLA takes over collection of the account and returns any money that it is able to recover to LVNV. Upon information and belief, Plaintiff believes that DLA is compensated on a contingency fee based on how much money it can recover on the defaulted account. During the collection of these accounts, DLA is acting only as a collector for LVNV and not as an attorney providing legal advice. Therefore, the communications between the two Defendants are outside the purview of the attorney-client privilege.

Accordingly, DLA's objections to Plaintiff's Interrogatory Nos. 3, 4, 5, 7, 8, 12, and 16 and Request for Production of Document Nos. 1, 2, 3, 4, 5, 9, 11, 12, 13, 16, 17, 18, 20, 22, 23, and 25, as well as LVNV's objections to Plaintiff's Interrogatory Nos. 3, 4, 5, 7, 8, 12, and 16 and Request for Production of Document Nos. 1, 2, 3, 4, 9, 11, 12, 13, 16, 17, 22, 23, 24, 25, and 26, should be overruled.

**E.    The Defendants' sparse discovery responses are inadequate.**

Despite being nearly a month late in responding to Plaintiff's discovery requested, the Defendants have provided almost no substantive responses. DLA provided no responses to Plaintiff's Interrogatory Nos. 9, 10, 13, and 15 and to Plaintiff's Request for Production of Document Nos. 5, 7, 8, 11 12, 13, 14, 15, 19, 21, 25, and 26. LVNV provided no responses to

Plaintiff's Interrogatory Nos. 2, 9, 10, 13, 14, and 15 and to Plaintiff's Request for Production of Document Nos. 5, 7, 8, 10, 11, 12, 13, 14, 15, 19, 24, and 25.

Out of the responses that were provided, many referred Plaintiff to the entire range of Defendants' document production. The identification of the entirety of its production as responsive to these requests is essentially the same as not identifying any documents at all. Defendant DLA responded to Plaintiff's Interrogatory Nos. 5, 7, 8, and 12 and Request for Production of Document Nos. 1, 2, 3, 4, 6, 9, 10, 18, 20, 22, 23, and 27 in this manner. LVNV provided similar responses to Plaintiff's Interrogatory Nos. 4, 5, 11 and 12 and Request for Production of Document Nos. 1, 2, 3, 4, 6, 9, 16, 17, 18, 23, 26, and 27. Further, the Defendants repeatedly identify documents as responsive to discovery requests when, in fact, they are not. For example, Plaintiff's Request for Production No. 27 to LVNV Funding seeks ""a plain-English description or glossary for any and all lists, legends, codes, abbreviations, collector initials, or other non-obvious terms, words, or data contained in any of the documents produced above." Ex. D, at 30. In response, LVNV directs Plaintiff to Documents with the bates range "LVNV/Smith 1-97". Ex. D, at 31. However, none of the documents in this range provide any explanations or glossaries of lists, legends, codes, abbreviations, collector initials, or other non-obvious terms, words, or data. This is the same for many of DLA's and LVNV's responses. For this reason, and for the reasons stated above, these responses are inadequate and the Court should compel the Defendants to provide full responses to these discovery requests.

Even where the Defendants did not refer the Plaintiff to their entire document production, the Defendants' responses are incomplete. For example, Plaintiff's Interrogatory No. 1 asked the Defendants to "State the full names and job titles of all individuals who provided information in answering these Interrogatories, and for each individual, describe the knowledge that (s)he

24

possesses regarding the Defendants' collection or attempted collection of money from the Plaintiffs." Ex. A, at 3; Ex. B, at 3. In response, DLA and LVNV provided merely a list of names and job titles. Ex. A, at 5; Ex. B, at 4. Neither Defendant "describe[d] the knowledge that (s)he possesses regarding the Defendants' collection or attempted collection of money from the Plaintiffs." Accordingly, the Defendants' response is incomplete and must be supplemented.

Similarly, Plaintiff's Interrogatory No. 2 asked the Defendants to:

> For each case in which [the Defendants have] been sued for violating 15 U.S.C. § 1692, *et seq.* for the five-year period preceding the filing date of the Complaint, state the name of the case, the case number, the jurisdiction in which it was filed and the outcome of the case (e.g. judgment for the Plaintiff, judgment for [Defendants], or settled).

Ex. A, at 6; Ex. B, at 5. In response, DLA provided the jurisdiction and case number of some cases that were filed in the Eastern District of Virginia and the Western District of Virginia. Ex. A, at 7. It did not provide the case name or the outcome of the case. LVNV provided no response at all to the interrogatory. Ex. B, at 6. Again, this request has been repeatedly granted in this District by Magistrate Judge Lauck and Judge Payne, and the Defendants must provide a full response to this request.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court: (1) overrule the Defendants' objections to Plaintiff's discovery; (2) grant the Plaintiff's Motion to Compel Full Discovery Responses by Defendants DLA and LVNV; and (3) grant the Plaintiff any such further relief that the Court deems just and proper.

Respectfully submitted,
**RENEE SMITH**


By:_____/s/_____
                    Of Counsel

Matthew J. Erausquin, VSB No. 65434
Janelle Mason Mikac, VSB No. 82389
Casey S. Nash, VSB No. 84261
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com
janelle@clalegal.com
casey@clalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David N. Anthony (VSB No. 31696)
Counsel for Defendants
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-5118
david.anthony@troutmansanders.com

Ethan G. Ostroff (VSB No. 71610)
Counsel for Defendants
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7541
Facsimile: (757) 687-1541
E-mail: ethan.ostroff@troutmansanders.com

*Counsel for the Defendants*

_____/s/_____
Casey S. Nash, VSB No. 84261
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:     (703) 273-7770
Fax:     (888) 892-3512
casey@clalegal.com

27